STATE OF CONNECTICUT *v.* JOHN J. JOHNSON, JR.

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued December 2, 1980—decision released February 13, 1981

*Robert G. Zanesky,* for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, and *Martin A. Rader,* assistant state's attorney, for the appellee (state).

COTTER, C. J. After trial to a jury, the defendant was convicted of robbery in the second degree. General Statutes § 53a-135.[1] The defendant has assigned error in the trial court's rulings on his motion to suppress and regarding the admissibility of certain evidence.

The evidence presented established the following facts. At approximately 9:45 a.m. on August 15, 1978, a young male wearing a green army shirt with cut-off sleeves and dark pants entered the "Pants And" store located in the North Street Shopping Center in Danbury. After lingering in the store for several minutes, the man ordered the sales clerk to "Give me all your money." The clerk saw what appeared to be a knife in the assailant's hand. She placed approximately forty dollars on the counter. He took the money, put it in his pocket and left the store, driving away in a blue car.

Later on the same day, the victim viewed a large number of mug shots at the Danbury police head-

---

[1] "[General Statutes] Sec. 53a-135. ROBBERY IN THE SECOND DEGREE: CLASS C FELONY. (a) A person is guilty of robbery in the second degree when he commits robbery and (1) he is aided by another person actually present; or (2) in the course of the commission of the crime or of immediate flight therefrom he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument.

"(b) Robbery in the second degree is a class C felony."

quarters. Although the defendant's picture was among those in the series of photographs, she was unable to identify the assailant.

On August 29, 1978, detectives Carvalho and Tierney of the Danbury police stopped a gray Chevrolet operated by the defendant accompanied by one passenger. The details of this automobile chase and apprehension of the defendant are set forth in our preceding opinion in *State* v. *Johnson,* 183 Conn. 148, 150–51, 438 A.2d 851, cert. denied, 452 U.S. 942, 101 S. Ct. 3089, 69 L. Ed. 2d 957 (1981), and will not be further elaborated at this time. The defendant's car was searched while in custody at the police station and a green army fatigue shirt and a pair of sunglasses were found. The shirt was found in the trunk and the sunglasses were discovered in the glove compartment. The defendant moved to suppress the evidence seized in the search at the police station and took exceptions to a denial of the motion and introduction of the seized items at trial.

Detective Brevard telephoned the victim on August 30, 1978. He told her that a suspect was in custody and that she should come to police headquarters to view some photographs. When the victim arrived, she was seated at Brevard's desk facing six photographs. Lying on an adjacent desk was a color photograph of the defendant as well as the army shirt, the sunglasses and a knife. The victim eliminated all but one of the black and white photographs from consideration, but was unable to decide whether the one photo remaining was the robber. (The remaining photograph was of the defendant.) When the victim was asked to compare the black and white photo to the colored photo lying

in close proximity to the shirt, glasses and knife, she then identified the defendant's photograph as the correct one. All but two of the photographs presented to the victim were dated "1974." The color picture of the defendant was dated "1978."

I

The defendant's first claim is that the trial court erred in allowing into evidence the out-of-court photographic identification of the defendant by the robbery victim. The United States Supreme Court has stated that "reliability is the linchpin in determining the admissibility of identification testimony." *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977). "The standard, after all, is that of fairness"; *Manson* v. *Brathwaite,* supra, 113; to be determined by examination of the "totality of the circumstances." *Neil* v. *Biggers,* 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972). The factors to be considered in determining the reliability of an identification "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Manson* v. *Brathwaite,* supra, 114, citing *Neil* v. *Biggers,* supra, 199–200.

We turn, then, to the facts of this case and apply the requisite standard. *Opportunity to view:* The victim had observed the defendant in a well-lit shop at approximately 9:30 a.m. The robber was not masked, although he did wear sunglasses and a

small beard. The robber was the only person in the shop besides the witness at the time of the robbery. The victim had observed the robber as a potential customer from a distance of less than ten feet for several minutes prior to the confrontation. *Degree of attention:* The robber was the only person in the store for a period exceeding ten minutes. The victim first observed the individual as a potential customer and later as her assailant. *Accuracy of the description:* The victim gave a description to the police within minutes of the robbery. No claim has been made that the defendant failed to fit the description provided to the police. *Witness' level of certainty:* Although it is true that the victim could not positively identify the original black and white photograph of the defendant with total certainty, the witness did eliminate the other photographs and did positively identify the color photograph. Apparently the black and white photo of the defendant was not as recent as the color photo and did not as closely resemble the defendant as he appeared at the time of the robbery. The victim was uncertain whether the two photographs were of the same person, but was certain that the color photograph was the assailant. *Time between the crime and the confrontation:* The victim gave her description to the police within minutes of the robbery. The photographic identification occurred approximately two weeks later.

These indicators of the reliability of the identification are not outweighed by the claimed suggestiveness of the identification procedure. The police presented the victim with an array of photographs. She easily eliminated five of the six pictures presented. In the process of deciding upon the sixth, the victim noticed a color photograph

resting upon an adjacent desk. Upon looking at that photograph, she made a positive identification of the defendant as the assailant in the robbery. As we have noted on prior occasions, "[i]t has been generally recognized that the presentation of several photographs to witnesses, including that of the suspect—the basic procedure used by the police in this case—is by itself a nonsuggestive and constitutionally acceptable practice, in the absence of any unfairness or other impropriety in the conduct of the exhibit." *State* v. *Hafner,* 168 Conn. 230, 237, 362 A.2d 925, cert. denied, 423 U.S. 851, 96 S. Ct. 95, 46 L. Ed. 2d 74 (1975).

In viewing the totality of the circumstances of this identification procedure we cannot say that the procedure was so impermissibly suggestive as to be likely to result in misidentification. In reaching this result, we especially note the victim's lengthy and clear view of her assailant.

## II

The defendant's second claim is that the trial court erred in failing to suppress the evidence obtained as a result of a search of the defendant's car. In our decision in *State* v. *Johnson,* 183 Conn. 148, 438 A.2d 851, cert. denied, 452 U.S. 942, 101 S. Ct. 3089, 69 L. Ed. 2d 957 (1981), involving the very same search, we held that the search was permissibly warranted under the automobile exception to the warrant requirement delineated by the United States Supreme Court in *Chambers* v. *Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970). Our holding in *State* v. *Johnson,* supra, is determinative of the defendant's claim in this case.

## III

The defendant further claims that the trial court erred in its charge to the jury. The defendant objected to the charge,[2] claiming that the court had failed to instruct the jury that the state must prove beyond a reasonable doubt the threatened use of a deadly weapon or dangerous instrument, citing *State* v. *Darden,* 171 Conn. 677, 681, 372 A.2d 99 (1976). Since the time of the trial of the defendant in *Darden,* General Statutes § 53a-135 has been amended to include a person who in the course of a robbery *"displays* or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument." (Emphasis added.) General Statutes § 53a-135 (a) (2). If we view the charge in its entirety and in light of the change in the relevant statute, the instruction given by the trial court was an accurate statement of the relevant law and could not have misled the jury. *State* v. *Piskorski,* 177 Conn. 677, 746–48, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979).

## IV

At trial the defendant sought to perform a voice demonstration in front of the jury without appearing as a witness. The intent of the proposed demonstration was to show that the defendant spoke with a distinctive Boston accent and that the victim had not noticed any such accent in her exchange with the robber.

---

[2] The portion of the charge to which the defendant objected was the follwing: "So, if you find that, if you believe Laura Leonetti, but find that what she said [w]as a knife actually was not a knife, but by any words or any action on the part of the accused he purported, it warranted to lead her to believe it was a knife you

We note that the proposed voice demonstration presented significant reliability problems in that feigning a Boston accent requires no special abilities. This demonstration of voice expression, delivery or style clearly lacks the reliability inherent in handwriting, clothing size and similar expositions. Had the defendant wished to introduce evidence of a particular speech pattern, the defendant's parents, friends and neighbors who testified could have been questioned regarding such a distinctive speech pattern. In view of the lack of reliability of the proposed demonstration and the existence of readily available alternative means of presenting the evidence to the jury, the trial court did not abuse its discretion in denying the defendant the opportunity to speak before the jury other than as a sworn witness.

## V

The defendant next claims that the state failed to establish the chain of custody of the army fatigue jacket and sunglasses offered as evidence against him. We do not decide this claim on the merits inasmuch as the defendant has failed to follow our established rules of practice. Section 3060F(c)(3) of the 1978 Practice Book requires the appellant to include in his brief a summary of the evidence introduced; the ground for its introduction; the objection and the ground on which it is based; the ruling of the court; and any exception that was taken. *State* v. *Stevens,* 178 Conn. 649, 656–57, 425

---

find then you may find that he was guilty of the lesser included charge of robbery in the second degree because in that case the defendant would be threatening the use of what purported to be or what might be represented by his words or conduct to be a dangerous instrument. If you find that, of course, he is guilty of robbery in the second degree."

A.2d 104 (1979); *State* v. *Roberson,* 173 Conn. 97, 101, 376 A.2d 1089 (1977). The defendant has presented us with no reason to disregard this rule, and our review of the record discloses none.

There is no error.

In this opinion BOGDANSKI, PETERS and PARSKEY, Js., concurred.

ARTHUR H. HEALEY, J. (dissenting). Because I believe that the state failed to demonstrate the presence of the exigent circumstances necessary to establish an exception to the warrant requirement of the fourth amendment regarding the police station parking lot search of the defendant's automobile; see *State* v. *Johnson,* 183 Conn. 148, 438 A.2d 851, cert. denied, 452 U.S. 942, 101 S. Ct. 3089, 69 L. Ed. 2d 957 (1981) (*Healey, J.,* dissenting); the articles seized in that search cannot be utilized as evidence against the defendant. Since I cannot conclude that the introduction of this evidence was harmless beyond a reasonable doubt, I would find error and order a new trial.