STATE OF CONNECTICUT *v.* JOHN J. JOHNSON

COTTER, C. J., BOGDANSKI, PETERS, HEALEY and PARSKEY, Js.

Argued November 4, 1980—decision released February 13, 1981

*Joette K. Rubin,* assistant public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan,* state's attorney, and *Martin A. Rader,* assistant state's attorney, for the appellee (state).

COTTER, C. J. The defendant has appealed from a judgment rendered pursuant to a jury verdict finding him guilty of knowingly having a weapon in a motor vehicle in violation of General Statutes § 29-38.[1] The defendant's sole claim on appeal is that the trial court erred in failing to suppress and in admitting into evidence the fruits of a warrantless search.

---

[1] "[General Statutes] Sec. 29-38. WEAPONS IN VEHICLES. Any person who knowingly has, in any vehicle owned, operated or occupied by him, any weapon for which a proper permit has not been issued as provided in section 29-28 or section 53-206, or has not registered such weapon as required by section 53-202, as the case may be, shall be fined not more than one thousand dollars or imprisoned not more than five years or both, and the presence of any such weapon in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. The word 'weapon,' as used in this section, means any pistol or

Five members of the Danbury police force testified to the following facts: On August 29, 1978, detectives Tierney and Carvalho were driving along Clapboard Ridge Road in Danbury looking for Robert Nardella for whom an arrest warrant was outstanding. Upon reaching the intersection with King Street, Tierney saw the defendant and a passenger seated in a 1968 Chevrolet parked perpendicular to the roadway. The passenger, later identified as Francis Main, put his arm over his face, leading the officers to believe him to be Nardella. The Chevrolet driven by the defendant then took off down Clapboard Ridge Road. After pursuing the defendant's car for one-quarter mile, the detectives activated their lights and siren. After a two mile chase, the defendant pulled his car to the side of the road when traffic conditions blocked his progress.

During the two mile chase, the police officers observed two items, a red cloth and a yellow box, being thrown from the passenger side of the defendant's automobile. After the police had stopped the automobile, detective Carvalho and two uniformed officers who had responded to a radio call for assistance detained the defendant and Francis Main, and detective Tierney walked back to where the box had been thrown out of the car. While waiting for Tierney to return, officer Karcz noticed a shotgun shell in plain view on the front passenger seat.

revolver, any dirk knife or switch knife or any knife having an automatic spring release device by which a blade is released from the handle, having a blade of over one and one-half inches in length, and any other dangerous or deadly weapon or instrument, including any slung shot, black jack, sand bag, metal or brass knuckles or stiletto or any knife, the edged portion of the blade of which is four inches or over in length."

Tierney returned with the yellow box which he found to contain unspent .38 caliber ammunition. Tierney also found other ammunition scattered along the shoulder of the road. He ordered the two uniformed officers to search the automobile for weapons. The defendant and Main, standing outside the vehicle, were also searched. Officer Karcz found a knife over four inches in length under the driver's seat. Officer Dodge discovered a shotgun shell on the floor. The officers also noticed items of clothing in the back seat.

The knife found under the driver's seat prompted the police officers to arrest the two men and take them back to the Danbury police station. Officer Karcz drove them to the station in the police cruiser and officer Dodge drove the defendant's car. Officer Dodge drove the car to the rear parking lot at the station and secured it in that area. Detectives Tierney and Carvalho returned to the site on Clapboard Ridge Road where the red cloth had been thrown from Johnson's car. They found the cloth and a .38 caliber fully loaded pistol with its serial number filed off. The detectives returned to the station and placed the defendant and his passenger under arrest for carrying a dangerous weapon in a motor vehicle and for altering its serial number.[2]

A renewed search of the defendant's automobile was conducted by officers Dodge and Bertolowicz in the police station parking lot. This search yielded additional clothing, a shaving kit containing more ammunition and a denim jacket and denim pants in which more .38 caliber ammunition was

---

[2] A substituted information charging the defendant with knowingly having a weapon in a vehicle in violation of General Statutes § 29-38 was filed on October 30, 1978.

found.  The denim jacket and denim pants were presented to the defendant to determine ownership. The defendant identified the jacket and pants as his.

The defendant moved to suppress the items discovered in the search of the car at the police station at a pretrial suppression hearing as well as at trial. The trial court denied the motion and permitted the state to introduce evidence that .38 caliber ammunition was found in the pockets of clothing belonging to the defendant.  The defendant claims error in these rulings, stating that the only proof of his knowledge of the existence of the gun was this evidence regarding the ammunition found in his clothing.

At the suppression hearing, the trial court made an oral finding that there was probable cause to search the vehicle on Clapboard Ridge Road.  The defendant does not seriously contest the validity of this initial search.  As to the renewed search, the court concluded that it was not an inventory search,[3] but held that the probable cause that existed for the earlier search continued.  The validity of this renewed search is the issue on appeal.

The search of the defendant's vehicle was conducted without a warrant and thus must come within a recognized exception to the warrant requirement of the fourth amendment in order to satisfy constitutional safeguards.  Searches conducted out-

---

[3] The trial court's oral ruling on the defendant's motion to suppress included the following passage:  "Sgt. Tierney testified that he ordered an inventory search.  I found that what[ever] he ordered, he did not get an inventory search and that it was not an inventory search.  The evidence is very clear in that regard.  There was no list of all the items made and the officers were very candid and forthright that their purpose was not to inventory the material but to see if there was a shotgun in the car."

side the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the fourth amendment—subject only to a few specifically established and well-delineated exceptions. *Katz* v. *United States,* 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). "The requirement of a warrant protects the individual's legitimate expectation of privacy against the overzealous police officer." *South Dakota* v. *Opperman,* 428 U.S. 364, 383, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976) (Powell, J., concurring). "Its protection consists in requiring that [probable cause be determined] by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. . . . When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman . . . ." *Johnson* v. *United States,* 333 U.S. 10, 14, 68 S. Ct. 367, 92 L. Ed. 436 (1948) (Jackson, J.). The only exception to the warrant requirement relevant to the facts of this search is the automobile exception. *Arkansas* v. *Sanders,* 442 U.S. 753, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979); *Coolidge* v. *New Hampshire,* 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); *Chambers* v. *Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970); *Carroll* v. *United States,* 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925).

As we noted in our decision earlier this term in *State* v. *Kolinsky,* 182 Conn. 533, 538, 438 A.2d 762 (1980), cert. denied, 451 U.S. 973, 101 S. Ct. 2054, 68 L. Ed. 2d 354 (1981), the United States Supreme Court has relied upon two justifications for its constitutional distinction between searches of and seizures from homes and similar structures as

compared to automobiles. " 'First, as the Court repeatedly has recognized, the inherent mobility of an automobile often makes it impracticable to obtain a warrant. See, e.g., *United States* v. *Chadwick,* 433 U.S. [1, 12, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977)]; *Chambers* v. *Maroney,* [supra, 49–50]; *Carroll* v. *United States,* supra. In addition, the configuration, use, and regulation of automobiles often may dilute the reasonable expectation of privacy that exists with respect to differently situated property. See *Rakas* v. *Illinois,* 439 U.S. 128, 155 [99 S. Ct. 421, 58 L. Ed. 2d 387] (1978) (Powell, J., concurring); *United States* v. *Chadwick,* supra; *South Dakota* v. *Opperman,* 428 U.S. 364, 368 [96 S. Ct. 3092, 49 L. Ed. 2d 1000] (1976); *Cardwell* v. *Lewis,* 417 U.S. 583, 590 [94 S. Ct. 2464, 41 L. Ed. 2d 325] (1974) (plurality opinion); *Cady* v. *Dombrowski,* [413 U.S. 433, 441–42, 93 S. Ct. 2523, 37 L. Ed. 2d 706] (1973); *Almeida-Sanchez* v. *United States,* 413 U.S. 266, 279, 91 S. Ct. 2535, 37 L. Ed. 2d 596] (1973) (Powell, J., concurring).' *Arkansas* v. *Sanders,* supra, 761."

Under the rule announced by the United States Supreme Court in *Chambers* v. *Maroney,* supra, the search of the defendant's automobile falls within the automobile exception to the warrant requirement. We therefore conclude that the trial court did not err in admitting the fruits of the renewed search into evidence.

There is no error.

In this opinion BOGDANSKI, PETERS and PARSKEY, Js., concurred.

ARTHUR H. HEALEY, J. (dissenting). I cannot agree with the result reached by the majority. I believe that the search of the defendant's vehicle in

the police station parking lot after the thorough search of the car after it was stopped following the chase takes this case beyond the ambit of *Chambers* v. *Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970). The station house search in this case is not a "renewed" search, it is a second search unattended by exigent circumstances.

In *Chambers,* the arrests occurred in the middle of the night in a dark parking lot. The court noted that "[a] careful search at that point was impractical and perhaps not safe for the officers . . . ." *Chambers* v. *Maroney,* supra, 52 n.10. That is not so here when both searches took place in broad daylight and no claim is made concerning any threats to the safety of the officers. In fact, the defendant's brief notes that the police station lot to which the defendant's car was taken is next to the courthouse. Thus, in *Chambers,* the station house search replaced the on-site apprehension search, and properly so; that cannot be arguably so here.

Moreover, in *Chambers,* a cogent reason justifying the on-site "search" was that such a search was necessary for the police to be sure they had stopped the correct blue vehicle and that they actually had apprehended the right persons; no such interests are present here as the police already had the actual vehicle and parties involved. Under the factual situation present in *Chambers,* both the police and the public had a significant interest in ascertaining that the vehicle stopped in the dark of night and the parties in it was that vehicle carrying those persons involved in the robbery in question; the vindication of such interests cannot reasonably be suggested to exist in the present case. In view of the "jealously and carefully drawn" exceptions to the warrant

requirement; *Coolidge* v. *New Hampshire,* 403 U.S. 443, 455, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); holding the police station parking lot search under the facts in this case valid extends *Chambers* too far. I would find error.