STATE OF CONNECTICUT *v.* ANONYMOUS (1981–1)

APPELLATE SESSION OF THE SUPERIOR COURT

SHEA, J. The defendant was found guilty of being a youthful offender in accordance with General Statutes §§ 54-76b to 54-76o, in a trial by the court. The conviction was based upon three charges arising from the same incident, criminal mischief in the third degree in violation of General Statutes § 53a-117, criminal trespass in the second degree in violation of General Statutes § 53a-108, and attempted larceny in the fourth degree in violation of General Statutes §§ 53a-49 and 53a-125. In this appeal, the defendant claims error in the denial of his motions to dismiss, to suppress certain evidence and for a new trial. He also maintains that his right to a jury trial was violated in this statutory proceeding.

The defendant has filed only the portion of the transcript relating to his motions to dismiss and to suppress evidence. The factual background as given by the arresting officer, who was the only witness presented by the state at the hearing upon the motions, is as follows:

Early in the morning of December 24, 1979, a New Haven police officer responded to a complaint concerning a break-in at the garage of an apartment complex in New Haven. He met Wesley McDade, the superintendent, about one block from the apartment building. McDade said that he found two intruders inside the apartment garage and that they fled when he shined his flashlight. He chased them, but they separated. He continued to follow one of them through the backyards of some houses toward Elm Street. McDade gave a description to the police officer of a white male, sixteen or seventeen years old, tall and thin with blonde wavy hair, who was wearing dark clothing.

The police officer believed that this description corresponded to that of a youth living within one and one-half blocks from the garage on a street off Elm Street. He drove McDade in the patrol car to the house where the defendant lived. The officer parked in front of the house, walked up to the front door and rang the bell while McDade remained sitting in the back seat of the car.

When the door was opened by the defendant's mother, the officer asked if he could speak with her son. The mother responded affirmatively and she went upstairs and returned with the defendant. The defendant was wearing dark clothing and the bottoms of his shoes were wet. The officer, who was standing in the hallway with the front door open, asked the defendant and his mother to step out onto the porch, which had a light turned on, so that someone could look at the defendant. McDade, who remained in the car about twenty-five feet from the porch, then identified the defendant as one of the intruders and the officer proceeded to arrest him.

I

The defendant claims several errors in the denial of his motion to dismiss. He first raises a ruling of the

trial court permitting the police officer to testify at the pretrial hearing on his motions about the statements which McDade made to him regarding the occurrence and the description of one of the intruders. The defendant objected to this testimony on the ground of hearsay. The trial court ruled that the testimony was admissible upon the issue of whether the officer had probable cause to make the arrest. In his brief, the defendant concedes the correctness of this ruling as, indeed, he must. 4 Wharton, Criminal Evidence (13th Ed. Torcia) § 721; *Draper* v. *United States,* 358 U.S. 307, 311, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959). His claim is now that such testimony was inadmissible based upon his motion to suppress identification testimony at trial which was heard in the same proceeding. It is obvious that this contention overlooks the limited nature of such a pretrial hearing where the truth of the prior statements of the identification witness is not at issue, only his mental ability to make an identification. The defendant also failed to raise his present claim before the trial court as a ground of objection nor did he raise it at any other time so far as the record discloses.[1] Only under exceptional circumstances, none of which is present

---

[1] The transcript relating to this objection to the officer's testimony is as follows:

"Defendant's attorney: Objection your Honor. I'm going to object to the statements that someone made to the Police Officer, that's clearly hearsay.

"Prosecutor: Your Honor, this is a hearing of Probable Cause, that is to determine whether or not the officer had probable cause to make the arrest. Is that true or not?

"Defendant's attorney: That's correct, your Honor.

"Prosecutor: In that case hearsay is admissible as to whether the officer had probable cause.

"Defendant's attorney: No, your Honor. We submit for proper procedures. The State should produce the witness who made the statement not the officer's recollection of the statement.

"Prosecutor: Your Honor, it's fundamental in a hearing of probable cause, hearsay is admissible what the officer was told, what information.

"The Court: Overrule the objection, let him answer the question.

"Defendant's attorney: Exception."

here, do we review claims not distinctly raised in the trial court. Practice Book § 3063; *State* v. *Evans,* 165 Conn. 61, 69–70, 327 A.2d 576 (1973).

The defendant next questions whether the arrest was authorized by General Statutes § 54-1f (a), which provides that police officers may arrest, "without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended in the act or on the speedy information of others." Since his arrest was upon misdemeanor charges, the defendant correctly asserts that this subsection, rather than § 54-1f (c), which pertains only to felonies, must be found to have been satisfied. His assertion is unfounded, however, that the statutory reference to "the speedy information of others" precludes any reliance upon supplementary observations made by the officer, such as his noticing that the defendant was fully dressed and that his shoes were wet at that time in the morning. We think the statute allows the officer to rely upon all the information which has come to his attention from whatever source derived, subject to the limitation that it must be "speedy" where only a misdemeanor is involved. See *State* v. *Anonymous (1977–5),* 34 Conn. Sup. 531, 538–39, 375 A.2d 417 (1977). The defendant does not question the fulfillment of the latter proviso.

The principal thesis of the defendant is that when the officer asked that he step out on the porch to be observed by the victim, his compliance with that request was not truly voluntary because he had not been advised and was not then aware that he had a constitutional right to refuse to do so. It follows, he argues, that the "request" was in fact a seizure of his person amounting to an arrest which was illegal because at that time the officer had insufficient reason to believe that the defendant had committed a crime. The contention that consent to a search or

seizure requires proof of a waiver of fourth amendment rights in the sense of an intentional relinquishment of a known right was rejected in *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 246, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973), which held that neither a warning of such rights or proof of knowledge of them was required for a finding of consent to a search. "Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." Id., 248–49. The only factors to which the defendant points as militating against a finding of willing consent are his youth and the fact that the officer was in uniform. On the other hand, he was in his own home with his mother present and there was nothing in the officer's conduct to suggest any element of coercion. There is no reason to believe that every response to a policeman's inquiry is presumptively coerced. Id., 247. The determination of the trial court that the procedure followed by the officer involved nothing improper is adequately supported by the evidence.

Since we have affirmed the conclusion of the trial court that the defendant willingly agreed to step onto the porch for the purpose of identification, we need not consider whether such a limited intrusion for investigatory purposes is constitutionally permissible in the absence of a warrant under the rationale of *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), as claimed by the state. Nor must we consider whether it falls within the ban against investigatory seizures as delineated in *Dunaway* v. *New York,* 442 U.S. 200, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979), upon which the defendant relies. Our agreement with this conclusion also removes the basis for the defendant's claim that there was no probable cause for his arrest,

because it is plain that the officer had such cause once McDade identified the defendant with the benefit of the porch light.

It appears that about three months after the trial and conviction of the defendant, who had filed this appeal, he made a motion for a new trial based upon the case of *Payton* v. *New York,* 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980), which was announced on April 15, 1980. In *Payton* it was held that, even where the police have probable cause to make an arrest for a felony, they may not forcibly enter a person's home to effectuate the arrest without a warrant, at least in the absence of exigent circumstances. Id., 590. No additional evidence was submitted at the hearing upon the motion for a new trial, but only arguments and briefs. The trial court decided that *Payton* was not retroactive because new fourth amendment rights resulting from judicial rulings invalidating established police practices have been given only prospective application. *Linkletter* v. *Walker,* 381 U.S. 618, 639, 85 S. Ct. 1731, 14 L. Ed. 2d 601 (1965); LaFave, Search and Seizure § 11.5. Although the case before us was pending on appeal on the date *Payton* was decided, April 15, 1980, that circumstance does not entitle the defendant to the benefit of any "new" rule established by the decision. *Williams* v. *United States,* 401 U.S. 646, 91 S. Ct. 1148, 28 L. Ed. 2d 388 (1971); *Desist* v. *United States,* 394 U.S. 244, 89 S. Ct. 1030, 22 L. Ed. 2d 248, reh. denied, 395 U.S. 931, 89 S. Ct. 1766, 23 L. Ed. 2d 251 (1969). It is not clear, however, that *Payton* established any such "new" rule for federal constitutional purposes, since the Supreme Court of the United States had never previously decided the issue. *Payton* v. *New York,* supra, 613; *Coolidge* v. *New Hampshire,* 403 U.S. 443, 480, 91 S. Ct. 2022, 29 L. Ed. 2d 564, reh. denied, 404 U.S. 874, 92 S. Ct. 26, 30 L. Ed. 2d 120 (1971); *Jones* v. *United States,* 357 U.S. 493,

499–500, 78 S. Ct. 1253, 2 L. Ed. 2d 1514 (1958). The lower federal courts generally had adopted the view of *Payton*. *Payton* v. *New York,* supra, 575 n.4. Although the majority of states sanctioned non-exigent warrantless felony arrests, such a practice had never received judicial approval in Connecticut. Id., 599 n.48. In *State* v. *Anonymous (1977–5),* 34 Conn. Sup. 531, 539–42, 375 A.2d 417 (1977), we seriously questioned the continuing validity of the majority rule. See *Payton* v. *New York,* supra, 599 n.48. If *Payton* had never been decided we should be compelled to consider the issue as we had done previously, since the defendant had challenged the validity of his arrest in the trial court. We see no reason to bar him from review of his claim simply because there is now available greater judicial reinforcement for his position.[2]

Our consideration of the merits of the defendant's contention regarding the applicability of *Payton* leads us to conclude that his arrest was entirely legal. When the police officer approached the defendant's home he was pursuing his investigation. Unlike the situation in *Payton,* where a locked door was broken open with crowbars, the entry into the defendant's home was consensual following the ringing of the doorbell and the opening of the door by the mother, according to the officer's testimony. The mother, who was the only witness who testified for the defendant at the hearing of his pretrial motions, never claimed a nonconsensual entry, although she disputed the ringing of the doorbell. We have previously discussed the question of whether the defendant's movement at the request of

---

[2] In his memorandum denying the motion for a new trial, the trial judge assumed that appellate review of the legality of the defendant's arrest would be afforded despite his conclusion that *Payton* was not retroactive. It should be noted that the grounds upon which a motion for new trial may be granted are narrower than the scope of review available upon an appeal. Practice Book, 1978, § 902.

the officer from the hallway onto the porch was the result of any coercion and have decided that it was not. Once the defendant was on the porch of his house, which is where we have concluded that the arrest took place after the identification, the principle protecting against a warrantless entry into a home was no longer applicable and the situation was governed by the rule which permits an officer to make a warrantless arrest in a public place upon probable cause. *United States* v. *Watson,* 423 U.S. 411, 423, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976). Although the porch of a house may be characterized as private under the law of property, it is not usually a place where a person has a reasonable expectation of privacy and the same fourth amendment protection is not afforded. In *United States* v. *Santana,* 427 U.S. 38, 42, 96 S. Ct. 2406, 49 L. Ed. 2d 300 (1976), this rationale was applied to validate the arrest made of a woman who was identified as a felon as she stood in the doorway of her home but retreated inside as the officers approached. The same principle is clearly applicable to the defendant's arrest upon the porch of his home.

The defendant makes a further claim that the information should have been dismissed because his claim at the pretrial hearing was really that the state would not be able to produce sufficient evidence at the trial to avoid an acquittal. The hearsay evidence of McDade, the apartment superintendent, could not be considered for that purpose. The record does not indicate that the defendant ever filed a motion to dismiss "based on the insufficiency of evidence or cause to justify the bringing or continuing of such information . . . or placing of the defendant on trial" in accordance with Practice Book § 815 (5). It also does not disclose whether he would have been entitled

under Practice Book § 816[3] to make such a motion. The defendant filed a motion to dismiss because his arrest was illegal and also a further "motion to dismiss re: probable cause." It is apparently this latter motion upon which he now relies but the only ground stated therein for dismissal is the failure of the state "to establish that there is probable cause to believe that the defendant committed the crimes alleged in said information." This motion could not fairly be construed as raising the issues which the defendant now seeks to litigate. We repeat that it is not our policy to consider matters which are raised for the first time on appeal. Practice Book § 3063.

II

We see little merit in the defendant's claim that the procedure followed by the police officer in this case was unduly suggestive and would warrant suppression of the "in-court" identification made by McDade. The officer testified that the only reason he went to the defendant's home is that he knew as a result of a prior unrelated noncriminal incident that a youth meeting the description which he was given lived there. It appears to have been a rather common investigative practice, and in a sense, a continuation of McDade's own pursuit of the intruders. It is not a situation where a proper line-up could readily have been arranged or seemed warranted because of the nature of the crime. We are not here concerned with the stringent requirements for identification procedures applicable after charges have been filed as set forth in *United States* v. *Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967), because the witness

---

[3] Practice Book § 816 provides as follows: "INABILITY TO MAKE MOTION. No defendant who has been indicted by a grand jury, or who has been arrested pursuant to a warrant, or who has had a determination of probable cause under Sec. 650, or who has waived such a determination may make a motion under paragraph (5) . . . of Sec. 815."

here identified the defendant prior to his arrest. *Kirby* v. *Illinois,* 406 U.S. 682, 92 S. Ct. 1877, 32 L. Ed. 2d 411 (1972).

Although one-on-one confrontations are inherently suggestive, whether they violate due process depends upon the "totality of the circumstances." *Stovall* v. *Denno,* 388 U.S. 293, 302, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967). The situation here does not approach the emergency proportions which were found to justify such a confrontation in *Stovall,* but it was nevertheless important that the viewing of the suspect take place promptly while he might still be wearing the same clothing which McDade had seen. The delay involved in arranging a line-up at that hour of the morning might have diffused the freshness of his memory.

Even an unjustifiably suggestive confrontation does not automatically require suppression of an identification, particularly an in-court identification to which the defendant's motion relates. *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *Neil* v. *Biggers,* 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972); *State* v. *Packard,* 184 Conn. 258, 262, 439 A.2d 983 (1981). The second part of the inquiry is whether the suggestive procedure followed has raised a substantial likelihood of irreparable misidentification under the "totality of the circumstances." The factors to be considered include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil* v. *Biggers,* supra, 199–200. Our review of the testimony at the hearing indicates an adequate basis under these standards for the trial court's conclusion that there was no substantial likelihood that the confrontation would taint McDade's identification of the defendant

at trial. Although it is now urged that the trial court should not have made this determination without first hearing McDade's testimony, the defendant made no such request at the hearing and was content to have his motion decided with only the testimony of the police officer and the defendant's mother presented.[4] His election not to file the transcript of testimony of the witness McDade at the trial indicates that nothing occurred there which would call into question the trial court's ruling upon his motion.

## III

The final claim of the defendant is that the provision of General Statutes § 54-76e[5] which precludes a person charged as a youthful offender from having a jury trial is unconstitutional under federal and state constitutional provisions guaranteeing such a right in criminal cases. As the defendant concedes in his brief, no such claim was raised in the trial court at any time. The record shows that the defendant as well as his attorney signed the application for youthful offender treatment in which a jury trial was expressly waived in accordance with General Statutes § 54-76d. Once again we refuse to consider a claim which was not raised in the trial court. Practice Book § 3063. It is not a situation which would qualify for review as an exceptional circumstance "where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." *State* v. *Evans,* supra, 70. The record here indicates only an express waiver of a jury

---

[4] After the prosecutor completed his cross-examination of the defendant's mother the defendant's attorney said: "I have no questions. We have no further witnesses concerning the motion. However, I am prepared to go forward with the legal argument."

[5] General Statutes § 54-76e provides as follows: "TRIAL TO DETERMINE YOUTHFUL OFFENDER STATUS. If the defendant enters a plea of 'not guilty' or if the court on its own motion so directs, the defendant shall be tried for the purpose of determining whether he shall be adjudged a youthful offender. The trial shall be held by the court without a jury."

trial by the defendant with the advice of counsel. Although the defendant correctly asserts that he had no other choice but to waive a jury trial in seeking youthful offender status because of the statutory provision, he was not prevented from raising the issue in the trial court by filing his application under protest or in some other way challenging the validity of the statute. There is nothing before us to suggest that the waiver was other than wholly voluntary.

There is no error.

In this opinion DALY and BIELUCH, Js., concurred.