STATE OF NORTH CAROLINA v. DENNIS "BUCKWHEAT" McENTIRE

No. 8429SC199

(Filed 18 December 1984)

1. **Constitutional Law § 48— ineffective assistance of counsel—failure to interview and summon witnesses before trial**

   Defendant did not have reasonably effective assistance of counsel where defense counsel failed to interview potential witnesses prior to trial, failed to take timely steps to bring them to court, and interviewed defense witnesses in court within hearing of the prosecutor. The conclusion that there is a reasonable probability that a different result would have been reached without counsel's errors is supported by the difficulty the jury had in reaching its verdict and by the inconsistent split verdict rendered.

2. **Criminal Law § 122.2— additional remarks on failure to reach verdict—improper**

   A new trial was in order where the jury deliberated for five hours, the foreman reported a wide numerical split and stated that the jury would have a hard time being unanimous, the court asked that the jury continue trying to reach unanimous verdicts, and the jury returned after 24 minutes with a split verdict inconsistent with the facts of the case. G.S. 15A-1235(b), Art. I, § 24 N.C. Constitution.

APPEAL by defendant from *Grist, Judge.* Judgment entered 20 October 1983 in Superior Court, RUTHERFORD County. Heard in the Court of Appeals 18 October 1984.

The defendant was charged with felonious breaking or entering and felonious larceny from the person. The State's evidence was based primarily on the testimony of the alleged victim, David Baber. Mr. Baber testified that he was awakened early the morning of 22 June 1983 by a smoke alarm. He stated that the alarm had been triggered by a fire burning in his bedroom window curtain, set by the defendant. He observed the defendant and two other persons backing a pickup truck up to the bedroom window. Defendant then climbed into the bedroom window. Baber testified that on seeing the defendant he leaped from bed and ran out the front door. Defendant chased him, knocked him down, and took his wallet, which contained five dollars. Baber alleged that when he returned to his house, four cans of pork and beans, a transistor radio worth $100, and a loaf of bread were missing.

When called to present evidence, the defense counsel responded that several of the defense witnesses were absent. He

first said they had no transportation. He then admitted that they had not been served with subpoenas. Two of the subpoenas had just been drawn up that day, and a third had not been properly delivered to the Sheriff's Department and accordingly had not been served. The trial court secured a list of missing witnesses from the defense counsel and asked counsel whether he wanted to request any other witnesses. The defendant mentioned his sister, Debbie McEntire. The defense counsel said he did not know how she would testify. The court suggested that she might testify that she accompanied defendant to the scene of the crime, and the defense counsel admitted that that was possible. The court then sent sheriff's deputies to locate defendant's witnesses.

When defendant's sister arrived at the courtroom, the defense counsel interviewed her with the prosecuting attorney within hearing distance. After she testified, the prosecutor questioned her about statements he had overheard her make a few minutes earlier to the defense attorney.

The defendant took the stand and denied Mr. Baber's accusations. He claimed to have been at home in bed at the time Mr. Baber alleged he broke into his house. Defendant stated also that he and Mr. Baber knew each other, and that he and Mr. Baber had had an argument early on the evening of 21 June 1983. Defendant stated that he believed Mr. Baber's hard feelings about this incident caused him to accuse defendant falsely of the crimes charged.

The jury retired to deliberate. After two hours of deliberation, without a verdict being reached, court was recessed for the day. The next morning the jury deliberated three hours, and then was brought to the courtroom. The judge asked as to the numerical division of the jury, and inquired whether progress was being made. The foreman replied that the jury was at a standstill, and that the members would have a hard time being unanimous under the circumstances. The judge told the jury that he did not want to "lean on" them "too heavy" or do anything to make them "go against their consciences," but urged them to continue deliberating. Eventually the jury agreed to return to deliberations after a recess. After 24 minutes of further deliberation, it found the defendant not guilty of breaking and entering, but guilty of robbery of the person.

Defendant was sentenced to the presumptive term of three years in prison. He appeals his conviction.

*Attorney General Rufus L. Edmisten, by Associate Attorney T. Byron Smith, for the State.*

*Adam Stein, Appellate Defender, by David W. Dorey, Assistant Appellate Defender, for the defendant appellant.*

ARNOLD, Judge.

[1] Defendant contends that he was denied effective assistance of counsel. He argues that his appointed counsel prepared inadequately for trial and conducted a preparatory interview with his alibi witness in the presence of the prosecutor. These omissions and mistakes, he says, caused him substantial prejudice at trial.

In assessing defendant's claim, we must determine, considering all the circumstances, whether his attorney rendered him "reasonably effective assistance." *Strickland v. Washington*, --- U.S. ---, 80 L.Ed. 2d 674, 693-94, 104 S.Ct. 2052, 2064-65 (1984). If defendant's attorney did not render such assistance, then we must determine whether prejudice resulted, *i.e.*, whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Washington*, 80 L.Ed. at 698, 104 S.Ct. at 2068. Our analysis of "reasonably effective assistance" and prejudice reduces essentially to whether defendant's trial was fundamentally fair. Our purpose is to ascertain whether counsel's performance so handicapped the presentation of defendant's case and so impaired the functioning of the adversarial process that we cannot say with confidence that the trial produced a just result.

Defense counsel's handling of his client's case certainly left much to be desired. Counsel apparently failed to interview witnesses for defendant prior to trial, or to take timely steps to assure they would be present at trial. Two subpoenas were drawn up on the day of trial and another was not delivered properly to the Sheriff's office, so that it was never served. During the defendant's trial, the trial judge sent deputies out to locate witnesses and summon them to court.

When the witnesses eventually arrived, defense counsel attempted to ascertain how they would testify. He apparently did

so within the hearing of the prosecutor. When one of the witnesses took the stand, the prosecutor sought to impeach her by referring to statements he had overheard a few minutes earlier.

Defense counsel did effectively cross-examine the State's witnesses, and also effectively examined his client and a police officer brought to the stand for the defense. Yet, we find that counsel's failure to interview potential witnesses prior to trial, his failure to take timely steps to bring them to court, and his interviewing of defense witnesses in court, within the hearing of the prosecutor, reflected not sound trial strategy, but serious neglect of his client's interests. In light of these circumstances, we cannot say that defendant received reasonably effective assistance of counsel.

Our analysis of whether defendant was rendered reasonably effective assistance virtually answers the second question, of whether defendant was prejudiced. The circumstances of this case indicate that counsel so compromised defendant's case that we cannot with confidence say that the adversary process produced a just result. Had counsel not made such unprofessional errors, a reasonable probability exists that the jury's verdict would have been different.

Our conclusion that there is a reasonable probability that a different result would have been reached is supported by the difficulty the jury had in reaching its verdict and by the inconsistency of the verdict itself, a split verdict, with the facts of the case as presented in the evidence.

[2] Defendant contends also that the trial judge's statements to the jury during deliberation, and especially his inquiry as to the jury's numerical division, were coercive and violative of the right to trial by jury guaranteed by Article I, § 24 of the North Carolina Constitution. We agree.

In *State v. Yarborough*, 64 N.C. App. 500, 307 S.E. 2d 794 (1983), this Court set out the standard for review in cases where the trial judge has inquired into a jury's numerical division. In that case, we declined to adopt a per se rule allowing a new trial each time such an inquiry is made, but observed that such an inquiry can, in certain circumstances, be useful. *Yarborough*, 64 N.C. App. at 502, 307 S.E. 2d at 795. To determine if it has caused

undue pressure on the jury, however, we must "examine the trial judge's inquiry in context of the totality of the circumstances." *Id.*

In the case at bar, the jury had deliberated the afternoon of 19 October and the morning of 20 October without reaching a verdict. At 12:20 p.m. on 20 October, the jury returned to the courtroom, and a dialogue ensued between the foreman and judge. The judge said to the foreman, "Well, I haven't heard a knock on the door." The foreman replied, "That's right." The judge then said, "What about it, Mr. Foreman?" The foreman replied, "Your Honor, we're trying to be fair. All that's involved, it's a very unique problem."

The judge then asked the foreman to give him the division of the jury, without any indication which way the vote was going. The foreman reported votes on the two charges of 9-3, 8-4, and 10-2, 5-7. The foreman stated that the jury was "at a standstill," and that he felt that the jury "would have a hard time being unanimous under the circumstances." The trial court stated:

> I don't want to lean on you too heavy. I don't want to make you do anything that would go against any of your consciences but if you think you can reach a verdict, we will let you try but if you don't think you can that's another problem. You've been out there now since yesterday about 2:30 until 5 yesterday and you've been out this morning from 9:30 to 12:30. Has there been any change in the vote in the last hour?
>
> Foreman: Yes, your Honor.
>
> The Court: Maybe you're making a little progress. Do you want to come back at 2 o'clock and try awhile longer? What do you all say? Let's make one more effort after 2 o'clock and if you feel like you can't reach unanimous verdicts in either one or both of these cases, then let us know, okay? We will take a recess now until 2 o'clock. Don't talk about the case during the recess and come back at 2 and we will go on a little further. Okay?

Thus, although the numerical split was fairly wide, and the foreman stated that the jury would have a hard time being unanimous, the court still desired that the jury should keep trying to reach unanimous verdicts. At this point in the deliberations, the

Unigard Mut. Ins. Co. v. Ingram, Comr. of Insurance

judge could have, and perhaps should have, declared a mistrial. Admittedly, whether to go on was a matter within his discretion. In the circumstances of this case, however, if no mistrial was declared, the better practice would have been to stress more clearly that each juror must decide for himself and not surrender his convictions for the mere purpose of returning a verdict. Indeed, the best practice would have been simply to repeat in toto the instructions of G.S. 15A-1235(b). The judge's failure to do this, the fact that the verdicts were eventually reached only twenty-four minutes after the jury returned to deliberate (while the jury had deliberated up to that point for five hours), and the fact that the split verdict returned was inconsistent with the facts of the case, suggest that the judge's remarks did influence certain members of the jury to agree, against their consciences, to unanimous verdicts. In the context of the totality of the circumstances, we find that the trial judge's remarks so influenced the jury that a new trial is in order.

New trial.

Judges WELLS and HILL concur.