STATE OF NORTH CAROLINA v. GEORGE EDWARD PATTERSON

No. 9018SC233

(Filed 18 June 1991)

### 1. Criminal Law §§ 501, 505 (NCI4th) — armed robbery — hung jury — inquiry into numerical division — further deliberations — no error

There was no error in an armed robbery prosecution where the court twice sent the jury back to deliberate after it indicated that it was deadlocked; the court inquired into the division, which was 11-1; defense counsel had specifically requested that the judge make such an inquiry; the judge twice told the jury that he did not want to know which way the jury was leaning; the judge gave repeated *Allen* instructions about the duty of jurors to follow their individual consciences; and, seen in their entirety, the judge's remarks to the jury were neutral and uncoercive.

**Am Jur 2d, Trial §§ 884, 900, 905.**

**Propriety and prejudicial effect of trial court's inquiry as to numerical division of jury. 77 ALR3d 769.**

### 2. Criminal Law § 68 (NCI3d) — armed robbery — police sketches — authentication — not admissible

Police sketches of an armed robbery suspect were properly authenticated but were not admissible where the police artist authenticated the sketches by demonstrating that he had prepared them himself soon after the robbery, but the state failed to prove the accuracy of either sketch, so that the sketches did not make defendant's participation in the crime more or less probable.

**Am Jur 2d, Evidence §§ 802, 803.**

**Admissibility in evidence of composite picture or sketch produced by police to identify offender. 42 ALR3d 1217.**

### 3. Criminal Law § 73 (NCI3d) — police identity sketches — hearsay

There was no prejudicial error in an armed robbery prosecution from the erroneous admission of police sketches of the suspects where the relevance of the sketches was not established because the witnesses who had seen the robbers did not

STATE v. PATTERSON

[103 N.C. App. 195 (1991)]

testify at trial about the accuracy of the sketches; it cannot be said that a sketch based on oral assertions alone is not a statement and therefore not subject to hearsay rules, absent a state rule parallel to Federal Rule 801(d)(1); and there was no prejudice because the state had two unequivocally positive identifications of defendant from witnesses on the stand; defendant's attorney fully explored the identification testimony but did not dwell on the sketches; and no inference can be drawn from the jury's request to see the sketches and a photograph of defendant during deliberations because the jury may have considered the sketches like or unlike the photo or defendant.

**Am Jur 2d, Evidence §§ 802, 803.**

**Admissibility in evidence of composite picture or sketch produced by police to identify offender. 42 ALR3d 1217.**

4. **Criminal Law § 46.1 (NCI3d) — armed robbery — evidence of flight — competent and sufficient**

The state's evidence of police efforts to locate defendant was admissible and was sufficient to support an instruction on flight where defendant's accomplice testified that he sent word to defendant to leave the jurisdiction; the chief detective in the case interviewed family members on two occasions and periodically made checks in other locations in an attempt to locate defendant; and defendant was discovered in California 12 years after the crime. The inability to locate defendant even with the aid of family for such a long period permits the inference that defendant was avoiding apprehension.

**Am Jur 2d, Trial § 788.**

5. **Criminal Law § 83 (NCI4th) — reinstatement of indictment — failure of prosecutor to file notice — waived by defendant's failure to file notice before trial**

The failure of the prosecutor to file a notice of reinstatement of indictment did not void an armed robbery conviction where defendant failed to file a motion addressed to the pleading before trial as required by N.C.G.S. § 15A-952(b)(6) and (c).

**Am Jur 2d, Indictments and Informations §§ 300, 301.**

APPEAL by defendant from judgment entered 28 August 1989 by *Judge James J. Booker* of GUILFORD County Superior Court. Heard in the Court of Appeals 23 October 1990.

STATE v. PATTERSON

[103 N.C. App. 195 (1991)]

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Philip A. Telfer, for the State.*

*Appellate Defender Malcolm Ray Hunter, by Assistant Appellate Defender Teresa A. McHugh, for defendant-appellant.*

PARKER, Judge.

Defendant was indicted in 1977 for the 9 April 1977 armed robbery of a Shoney's Restaurant in Greensboro. Because the order for his arrest could not be served, the prosecutor entered a dismissal with leave of the charge against defendant on 4 October 1979. Defendant was eventually located in California, where he was arrested for the Greensboro offense in November 1988.

At trial, which began on 22 August 1989, the State's case consisted of testimony from a number of witnesses, most of whom were put on to identify defendant as the perpetrator, and about two dozen exhibits. Thomas Avant testified that he and defendant had robbed Shoney's together that day. Identification of Avant as one of the robbers by Shoney's manager, Schultz, soon after the commission of the crime led to Avant's arrest and guilty plea. Schultz identified defendant in the courtroom as the other robber and also as the robber who had hit him with a gun.

Q. Do you see any of those people here in the courtroom?

. . .

A. Yes, he's sitting at the defense counsel.

. . .

Q. Would you point out the person that you say you see here in the courtroom and describe him?

. . .

A. Mr. Patterson sitting beside of the defense counsel.

Q. How do you know that's him?

A. Because when I turned around and asked him what they wanted, he pulled out a gun and said, "This is a robbery," and I looked him eye to eye. I couldn't ever forget the face, especially after being hit over the head several times by the same person.

Q. Is there any doubt in your mind that this man is the man that pistol whipped you?

A. There is no doubt in my mind that this is the same man. It is the same man.

Another employee, Baldwin, who was also present during the robbery, testified that there were some similarities between defendant and the robber with the gun. Baldwin could not positively identify defendant as the robber; he had picked out Avant as one of the robbers in a photo lineup but had picked out the photo of someone other than defendant as possibly the robber with the weapon. Shoney's cook testified that he had not seen a gun and mentioned that a bruise under defendant's eye was similar to a mark on one of the robbers. At trial none of these eyewitnesses testified that the police had made drawings of the two robbers based on the witnesses' descriptions given soon after the crime.

A police officer who had worked with four eyewitnesses to create composite sketches of both robbers was on the stand later when the prosecution moved, over defense objection, to have those drawings admitted into evidence. The sketches were admitted and the police artist told the jury how such composites are put together. The detective who had handled the case from the time of the crime to defendant's arrest also testified as to the dates on which he had tried to locate defendant in different cities. He gave no testimony about his reasons for contacting people in those cities at various times over the years.

Defendant's counsel learned of the existence of these composite drawings during *voir dire* examination of Baldwin on the first day of trial and asked to examine the sketches at that time. The sketches were introduced into evidence on the second day of trial. On *voir dire* the police artist identified Schultz and Baldwin, who were in the courtroom, as two of the eyewitnesses who had helped with the sketches just after the robbery. Both those witnesses had already testified. On direct examination, Baldwin was not shown or asked to authenticate the sketches later presented at trial. Schultz did not mention, nor was he asked about, the sketches. The sketching officer was unable to remember who the other two eyewitnesses had been; those two eyewitnesses were never identified by the State.

At the close of the State's case, defendant moved to dismiss. Upon denial of the motion, defendant, through counsel, offered

several documents including: a transcript of Avant's 1977 plea, confessing to five armed robberies in exchange for a recommendation that all sentences run concurrently; a letter from Avant to defendant's counsel dated February 1989, stating that, contrary to Avant's prior statements to the police in 1977, defendant had not been at the crime scene in Greensboro; a notice that the State would pray judgment be entered against Avant on 21 August 1989 for the Shoney's robbery; the eight photos in the recent police photo array from which Schultz and the cook had been unable to pick out defendant; and a photo of another suspect picked out of the same photo lineup by Baldwin. Defendant did not testify.

The jury began deliberations in the late afternoon and adjourned for the night after a little more than an hour. The next morning the jury deliberated, on and off, for about two hours. Early that morning the jury asked to examine three exhibits, namely, the police sketches of the two robbers and the 8″ X 10″ photograph of defendant used by the police a few weeks before in the photo array. Schultz had admitted at trial that he had not been able to pick out that photograph of defendant from the photo lineup.

The jury returned to the courtroom for half an hour to review these pictures. At that time the judge explained that he would not answer a specific question the jury had asked because the court did not want to prejudice the jury for or against the defendant. Forty-five minutes later, at 11:15, the jury sent a note informing the judge that "[w]e are unable to reach a unanimous decision at this time."

Before the jury was called back to the courtroom, the judge invited comments from both the prosecutor and the defense attorney preliminary to reading to the jury a proposed instruction on failure to reach a verdict. The prosecutor asked that the jury be allowed to deliberate "for the day." Defense counsel requested that the judge ask for the numerical split, without asking which way the jury was leaning. The prosecutor then requested that the judge also read the North Carolina version of the *Allen* charge in N.C.G.S. § 15A-1235, specifically the four sub-parts in (b). Upon their return, the jury indicated to the judge that they were divided 11-1. The court gave a detailed *Allen* instruction, emphasizing five times that each juror was to abide by his conscientious conviction as to the weight or effect of the evidence. The jury resumed deliberations at 11:24.

At 11:55 the jury sent another note saying: "We are hopelessly deadlocked. It does not appear that any time or further deliberations would change the existing vote." Before calling the jury back into the courtroom, the judge once again heard from counsel. The prosecutor requested that the judge let the jury continue to deliberate as the trial had already lasted for four days and the jury had deliberated only four hours. Defendant's attorney moved for a mistrial; the motion was repeated several times during the subsequent proceedings. The prosecutor suggested that the judge just send an order to continue to the jury. The court denied the defense motion for mistrial and decided to re-call the jury.

In expressing its appreciation for the jury's work on the case, the court told the jury: "I think it would be to everyone's advantage, however, if you would continue your deliberations for sometime yet. And this is not to put pressure on anybody to make any change that their conscientious convictions require them to make." The judge then recessed for lunch, saying that "[p]erhaps a little bit of time away from the problem might be of some assistance."

After the lunch break, the judge spoke again with the lawyers in open court out of the jury's presence. Then he simply told the jury that they could "continue [their] deliberations for a while" and repeated both the *Allen* charge and an instruction about the ascertainment of truth. Fifty-five minutes later the jury returned a verdict of guilty. Defense counsel had the jury polled, and each juror expressed individual consent.

The judge denied defendant's motion that the verdict be set aside as well as the motion for judgment notwithstanding the verdict. Defendant was subsequently sentenced to life imprisonment.

On appeal, defendant contends the trial court erred by: (i) coercing a verdict when the jury was deadlocked, (ii) admitting the composite sketches and (iii) admitting irrelevant evidence on the issue of flight and instructing the jury on this issue. The defendant also argues that the entry of judgment is void because the prosecutor failed to reinstate the indictment that had been dismissed with leave in 1979.

I

*Coercion of the Verdict*

[1] Defendant contends that the trial court erred by inquiring into the jury split and denying defendant's motion for mistrial

when the jury was deadlocked. Defendant asserts violation of his right to a jury trial under both the United States and the North Carolina Constitutions. By failure to raise the federal constitutional issue at trial, defendant has, however, waived that argument on appeal. *State v. Bussey*, 321 N.C. 92, 95, 361 S.E.2d 564, 566 (1987). Under applicable State law, the "totality of the circumstances" is the test for determining whether the trial judge's actions have coerced a verdict thereby impinging on a defendant's right to jury trial. *Id.* at 96, 361 S.E.2d at 566-67; *State v. Fowler*, 312 N.C. 304, 322 S.E.2d 389 (1984). Unlike federal law, under North Carolina law judicial inquiry into the numerical split of the jury is not "inherently coercive." *Fowler*, 312 N.C. at 308, 322 S.E.2d at 392-93.

Defendant argues the trial judge's actions in this case were coercive under *State v. McEntire*, 71 N.C. App. 720, 323 S.E.2d 439 (1984). In *McEntire* the trial judge made two inquiries on his own initiative about the jury split. On appeal this Court observed that the wide divergence in the split on both offenses charged—9-3 and 8-4 at the first inquiry, and 10-2 and 5-7 at the second—raised the suspicion of coercion. *Id.* at 724, 323 S.E.2d at 442. In the present case by contrast, the split was 11-1; and defense counsel had specifically requested that the judge make such an inquiry. In addition, the judge twice indicated to the jury that he did not want to know which way the jury was leaning.

Nor did the judge in this case fail to signal the importance of individual conscience in voting on a verdict, unlike the judge in *McEntire*. The judge in the present case gave repeated *Allen* instructions about the duty of jurors to follow their individual consciences. In *McEntire*, this Court observed:

> [T]he better practice would have been to stress more clearly that each juror must decide for himself and not surrender his convictions for the mere purpose of returning a verdict. Indeed, the best practice would have been simply to repeat in toto the instructions [in the *Allen* charge].

*Id.* at 725, 323 S.E.2d at 442. The judge in this case followed "the best practice." Seen in their entirety, the judge's remarks to the jury were neutral and uncoercive. We find, therefore, that the trial judge did not abuse his discretion in sending the jury back to deliberate two times after the jury indicated it was having trouble reaching unanimity.

II

*The Sketches*

[2]   We next turn to defendant's contention that the sketches were not properly authenticated and were inadmissible hearsay. Police or eyewitness sketches or composite pictures, if relevant and probative, are admissible, 1 *Brandis on North Carolina Evidence* § 34, at 164-66 (3d ed. 1988) (footnotes and citations omitted); but to be admissible, "[t]he exhibit must be identified as sufficiently accurate," *id.* at 165-66. "The touchstone for admissibility of all exhibits is proper authentication." *State v. Rogers*, 316 N.C. 203, 223, 341 S.E.2d 713, 725 (1986), *overruled on different ground, State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988).

Although our research discloses no North Carolina case setting forth the exact requirements for proper authentication of police sketches, the general guideline is established in N.C.G.S. § 8C-1, Rule 901(a):

> The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

The official Commentary to Rule 901(a) of the North Carolina Rules of Evidence cautions, however, "that compliance with requirements of authentication or identification by no means assures admission of an item into evidence, as other bars, hearsay for example, may remain."

The special police investigator who had prepared the drawings testified that the sketches were copies of the two he had prepared from discussions with eyewitnesses to the 1977 robbery. He explained the use of facial components from an "Identi-kit" to change features in a composite "until the individual is satisfied that what we have is as close as we can get to the person that they are trying to identify." The investigator said that he recognized two of those eyewitnesses in court, Schultz and Baldwin, but did not see the other two. Defendant's counsel objected to admission of the sketches on a number of grounds. We hold that the police artist authenticated the sketches by demonstrating that he himself had prepared them soon after the 1977 robbery.

STATE v. PATTERSON

[103 N.C. App. 195 (1991)]

As noted, however, compliance with the facial requirements of Rule 901(a) does not mean (i) that an exhibit automatically qualifies as relevant under Rule 401 or (ii) if relevant, that it is admissible under Rule 802. While an object is ordinarily admissible when the proponent proves some relevant connection with the case, *State v. Sledge*, 297 N.C. 227, 254 S.E.2d 579 (1979), Rule 401 requires of relevant evidence that it have a "tendency to make the existence of any fact . . . of consequence . . . more probable or less probable . . . ." N.C.G.S. § 8C-1, Rule 401.

In this case the State failed to prove the accuracy of either sketch, so that the sketches did not make defendant's participation in the crime more or less probable. Hence the relevancy of the sketches is questionable. The jury heard no testimony from any of the eyewitnesses who had helped "draw" the sketch that either sketch in fact looked like the robbers. Further, the sketching officer had no personal knowledge of the suspects' appearances and could not, therefore, vouch for the accuracy of the sketched representations. Only the eyewitnesses could have testified that the sketches were accurate or inaccurate and there was no such testimony. "[A] sketch is irrelevant until there has been evidence that it was the subject of a prior identification made by a witness. . . . Thus, unless the witness testifies, the sketch remains irrelevant and therefore inadmissible." *United States v. Moskowitz*, 581 F.2d 14, 21-22 (2d Cir.), *cert. denied*, 439 U.S. 871, 58 L.Ed.2d 184 (1978).

[3] However, even if an eyewitness had testified that either sketch was a good likeness of defendant, the evidence would still not have been admissible as substantive evidence in this State. Under the North Carolina Rules of Evidence, the sketches cannot be categorized as "nonhearsay," as might be the case under Federal Rule of Evidence 801(d)(1) covering prior out-of-court identifications and other previous "statements." The Commentary to N.C.G.S. § 8C-1, Rule 801 explains that North Carolina Rule 801(d) does not parallel the federal rule because the categories of prior statements embraced in Federal Rule 801(d)(1) had long been called "hearsay" under State common law. The legislature, therefore, deleted the federal version of 801(d)(1) from the State rule altogether.

We, therefore, examine the application of the hearsay rule as written in North Carolina to police sketches of a suspect drawn on the basis of descriptions furnished by eyewitnesses to criminal activity. The threshold question is whether the sketches are

"statements" within the meaning of Rule 801(a): "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion." The North Carolina Commentary to this definition of "statement" points out the seeming non-difficulty of interpretation of the first sub-part:

> It can scarcely be doubted that an assertion made in words is intended by the declarant to be an assertion. Hence verbal assertions readily fall into the category of 'statement'.

The State quotes *Moskowitz,* for the proposition that "the sketch itself, as distinguished from [the victims'] statements about it, need not fit an exception to the rule against hearsay because it is not a 'statement' and therefore can no more be 'hearsay' than a photograph identified by a witness." *Moskowitz,* 581 F.2d at 21. Reasoning from the language in the State Commentary to Rule 801(a)(1), we view a sketch as but a silent depiction or replication of "an assertion made in words" about a suspect's corporeal appearance and thus a statement for purposes of the application of exclusionary Rule 802.

The State's reliance on *Moskowitz* is misplaced for the reason that the facts permitting that court to find that the sketches had been properly authenticated under Federal Rule 901 are substantially different from those before us. In *Moskowitz* two eyewitnesses to a robbery described the suspect to a police artist the next day. At trial both witnesses testified that they had previously said the sketch looked like the robber. The appellate court scrutinized the defendant's argument that a sketch, if it is a statement, is a statement of the police artist himself, who must testify and expose himself to cross-examination in order to meet the requirements of Federal Rule 801(d)(1)(C), which would place the sketch in the federal category of "nonhearsay." The Court held that the sketch was not a statement; hence its admissibility was governed solely by the authentication requirements of Rule 901 and the sketch was admissible because "[b]oth witnesses testified at trial and were subject to cross-examination" and "[t]he sketch was authenticated by extensive testimony that the sketch introduced at trial was the same sketch identified by the witnesses." *Id.*

In a concurring opinion in *Moskowitz,* Judge Friendly observed that "a more straightforward analysis [would be] to regard the sketch as an integral part of [the witness'] statements to the police artist which enabled him to draw it, making the sketch admissible

under 801(d)(1)(C)." *Id.* at 22. By implication then the concurring judge considers the sketches to be statements covered by Federal Rule 801(d)(1)(C), which but for the federal nonhearsay category would run afoul of the hearsay rule and would require the declarant of the prior identification to be present at trial for purposes of cross-examination. That interpretation is echoed in treatises commenting on the federal rule that established the nonhearsay category for prior identifications. "Rule 801(d)(1)(C) reaches . . . an identification made from a sketch, laying the groundwork for receipt of the sketch itself." 4 D. Louisell & C. Mueller, *Federal Evidence* § 421, at 206-207 (1980) (footnote omitted). "Rule 801(d)(1)(C) should . . . be interpreted as allowing evidence of prior identification by the witness of a photograph or sketch of the person he had initially perceived." 4 *Weinstein's Evidence* 801-221 (1990).

In the present case, absent any State rule parallel to the Federal Rule 801(d)(1) "escape hatch" from the hearsay rule for prior statements and prior identifications, this Court cannot say that a sketch based on oral assertions, and on oral assertions alone, is not a "statement" and, therefore, not subject to the hearsay rules, as a preliminary matter. In that sense, the composites here are not analogous to photographs because the sketches are not necessarily an "accurate" representation of what they in fact purport to show.

Under either a relevance analysis or a hearsay analysis, the sketches in this case were inadmissible. The relevance of the sketches was not established because the witnesses who had seen the robbers did not testify at trial about the accuracy of the police composites. As "statements," Rule 802 of the North Carolina Rules of Evidence requires their exclusion if offered as substantive evidence, because they do not come within a hearsay exception.

> [T]he basic North Carolina rule continues to classify prior statements of a witness [as] hearsay, thus not admitting them as substantive evidence, but freely allowing them to be received as corroboration or impeachment.

1 *Brandis on North Carolina Evidence* § 139, at 641 n.18 (3d ed. 1988); *see also id.* §§ 40, 46, 51 & 141. We hold, therefore, that admission of the sketches was error in this case.

We come, then, to the question of possible prejudice to the defendant. Under N.C.G.S. § 15A-1443(a) a defendant must demon-

strate that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." *State v. James*, 321 N.C. 676, 683, 365 S.E.2d 579, 583 (1988) (no prejudice where sketch of crime scene used by witness on the stand had been prepared by another State witness); *State v. Milby*, 302 N.C. 137, 273 S.E.2d 716 (1981) (test is whether there is a reasonable possibility that the evidence in question contributed to the conviction).

Defendant argues the probable weight accorded the sketches by the jury, as against the allegedly less convincing identifications at trial. But in this case, the State had two unequivocally positive identifications of defendant from witnesses on the stand, the accomplice and Schultz, the manager who had been pistol whipped during the robbery. Schultz explained to the jury that the restaurant used artificial lighting twenty-four hours a day, so that his view of the robbers was excellent. He estimated that he was held and threatened at arm's length for an "eternity" lasting approximately ten or fifteen minutes. Among the factors to be considered by the court in determining the admissibility of an in-court identification and hence by the jury in weighing the credibility of that identification are the opportunity of the witness to view the suspect at the time of the crime, the witness' degree of attention and the level of certainty demonstrated by the witness at the courtroom confrontation. *See State v. Wilson*, 313 N.C. 516, 529, 330 S.E.2d 450, 460 (1985); *State v. McLean*, 83 N.C. App. 397, 402, 350 S.E.2d 171, 174 (1986). Although Schultz had failed to pick out defendant from a photo lineup two weeks before trial, his testimony revealed that he had excellent opportunity and reason for remembering defendant's appearance. His in-court identification was definite and emphatic. Further, Baldwin and the Shoney's cook both thought that there was some similarity between defendant and one of the robbers.

In closing argument at trial, defendant's attorney fully explored (i) the credibility or lack thereof of the identification testimony in general and the trial identification testimony in particular, (ii) the problems of cross-racial identification and (iii) the failure of eyewitness memory. Using a sketch tablet, defense counsel highlighted for the jury inconsistencies in details as to color of clothing, complexion and facial marks. Defense counsel also emphasized that Avant's testimony seemed calculated to explain away these many inconsistencies, particularly Avant's revision in court

of discrepant details between the testimony of other trial witnesses and his own 1977 talks with the police about defendant's alleged involvement in the robbery. Defense counsel did not, however, dwell on either the two sketches or the 8″ X 10″ photograph of defendant introduced at trial, except to say that "the witnesses didn't talk to us about the composite," "[w]e've just got this composite that was the product of somebody's statements to the officers," and "these photo lineups are shown to the State's witnesses and they can't identify [defendant]."

During deliberations the jury asked to review the drawings and the photo of defendant. We can draw no inference, however, from the jury's request. The jury may have considered the sketch like or unlike the photo or the live appearance of defendant at trial. Either way, from the evidence before them, particularly the two positive in-court identifications, the jury could have convicted defendant. On this record we hold admission of the sketches was not prejudicial error.

## III

### Other Issues

[4] Defendant's contentions concerning the admissibility of the evidence showing police efforts to locate defendant and the insufficiency of trial evidence to support a jury instruction on flight are without merit. Defendant argues that the detective's testimony was not relevant; but in light of other testimony, the testimony was relevant to show flight. Defendant's self-described accomplice testified that he had sent word to defendant to leave the jurisdiction. The chief detective in the case interviewed family members on at least two different occasions in an attempt to locate defendant. The detective also testified that he periodically made checks in other locations, attempting to determine defendant's whereabouts and culminating with the discovery of defendant in California twelve years after the crime. The inability to locate defendant even with the aid of family members for such a long period of time permits the inference that defendant was avoiding apprehension. This evidence is also sufficient under *State v. Lampkins*, 283 N.C. 520, 522, 196 S.E.2d 697, 698 (1973), to support an instruction on flight.

[5] Finally as to defendant's contention related to the indictment, the failure of the prosecutor to file a notice of reinstatement of the indictment under N.C.G.S. § 15A-932(d) does not void the judg-

ment in this case because an indictment is a pleading. N.C.G.S. § 15A-921(7). Defendant failed to file a motion addressed to the pleading before trial, as required by N.C.G.S. §§ 15A-952(b)(6) and (c). Not having objected at that time, defendant cannot now obtain relief on that basis.

No error.

Judges JOHNSON and EAGLES concur.