STATE OF NORTH CAROLINA v. GEORGE EDWARD PATTERSON

No. 325PA91

(Filed 4 September 1992)

**1. Criminal Law § 572 (NCI4th) — armed robbery — deadlocked jury — refusal to grant mistrial — no error**

    The trial court did not err in an armed robbery prosecution by inquiring into the numerical division of the jury and

STATE v. PATTERSON

[332 N.C. 409 (1992)]

refusing to grant a mistrial where the jury began its delibera-
tions at 3:57 p.m. on 24 August 1989 and deliberated until
court was adjourned for the evening at 5:06 p.m.; the jury
resumed its deliberations at 9:37 a.m. on 25 August 1989; the
jury returned to the courtroom to view exhibits at 9:56 a.m.
and resumed its deliberations at 10:27 a.m.; at 11:15 a.m., the
jury sent a note to the court stating that it was unable to
reach a unanimous decision; the prosecutor asked for the Allen
charge and the defense counsel asked for an inquiry into the
numerical division of the jury; the court made that inquiry
and the jury indicated that it was divided eleven to one; the
trial court then instructed the jury in accordance with N.C.G.S.
§ 15A-1235, emphasizing five separate times that each juror
was to abide by his or her conscientious conviction as to the
weight or effect of the evidence; the jury resumed its delibera-
tions at 11:24 a.m.; the jury sent a note to the court at 11:55
a.m. stating that it was deadlocked; defendant moved for a
mistrial, but the court brought the jury back, expressed its
appreciation, indicated that it would be to everyone's advan-
tage for deliberations to continue and recessed for lunch; the
court repeated the Allen charge after lunch; the jury returned
a verdict fifty-five minutes later; and each juror expressed
assent to the verdict when polled. Any error in inquiring into
the numerical division of the jury was invited, and, based
upon the totality of the circumstances, neither the court's refusal
to grant a mistrial nor any of its other actions were coercive
of the jury's verdict.

Am Jur 2d, Trial § 1583.

Propriety and prejudicial effect of trial court's inquiry
as to numerical division of jury. 77 ALR3d 769.

2. Evidence and Witnesses § 1907 (NCI4th) — armed robbery —
Identikit composite drawings — not hearsay

The trial court did not err in an armed robbery prosecu-
tion by admitting into evidence composite drawings of the
perpetrators created by an investigator using an Identikit pro-
cedure during consultations with four witnesses the day after
the robbery. A composite picture is the functional equivalent
of a photograph in that it merely reflects the perpetrator's
likeness, albeit as recorded by the witness's eyes rather than

the witness's camera. No assertion or statement is involved. N.C.G.S. § 8C-1, Rule 802.

**Am Jur 2d, Evidence § 783.**

**Admissibility in evidence of composite picture or sketch produced by police to identify offender. 42 ALR3d 1217.**

3. **Evidence and Witnesses § 1907 (NCI4th)— armed robbery— Identikit composite drawings—not properly authenticated— harmless error**

There was no prejudicial error in an armed robbery prosecution where the trial court erroneously admitted composite drawings of the perpetrators without evidence that the pictures accurately portrayed the eyewitnesses' recollections of what the perpetrators had looked like, but the State introduced two eyewitnesses who testified in open court and whose identifications were unequivocal and definite. N.C.G.S. § 8C-1, Rule 901(a).

**Am Jur 2d, Evidence § 783.**

**Admissibility in evidence of composite picture or sketch produced by police to identify offender. 42 ALR3d 1217.**

4. **Evidence and Witnesses § 222 (NCI4th)— flight—detective's efforts to locate defendant—instruction on flight**

The trial court did not err by admitting a detective's testimony concerning his efforts to locate defendant or by giving an instruction on flight where defendant's accomplice testified that he warned defendant to flee the jurisdiction and the detective testified that he conducted an exhaustive search for twelve years until defendant turned up in California.

**Am Jur 2d, Evidence § 281.**

5. **Criminal Law § 83 (NCI4th)— armed robbery—indictment dismissed with leave—not properly reinstated—no objection before arraignment—error waived**

A defendant in an armed robbery prosecution waived any error in the State's alleged failure to comply with the requirements for reinstating an indictment where defendant contended that the indictment against him was dismissed with leave ten years before he was tried and that the prosecutor did not give proper notice of reinstatement as required by

N.C.G.S. § 15A-932, but defendant failed to object prior to his arraignment. N.C.G.S. § 15A-932(b) is a procedural calendaring device, is not jurisdictional, and failure to comply with its requirements does not result in the failure of the pleading to charge an offense within the meaning of N.C.G.S. § 15A-952(d).

**Am Jur 2d, Criminal Law § 408.**

Justice FRYE concurring in the result.

Justices WEBB and WHICHARD join in this concurring opinion.

ON discretionary review of the decision of the Court of Appeals, 103 N.C. App. 195, 405 S.E.2d 200 (1991), finding no error in the defendant's trial or in the judgment entered on 28 August 1989 by *Booker, J.,* in the Superior Court, GUILFORD County. Heard in the Supreme Court on 12 March 1992.

*Lacy H. Thornburg, Attorney General, by Phillip A. Telfer, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Teresa A. McHugh and Mark D. Montgomery, Assistant Appellate Defenders, for the defendant-appellant.*

MITCHELL, Justice.

The defendant was indicted for robbery with a firearm in violation of N.C.G.S. § 14-87. He was tried at the 21 August 1989 Criminal Session of Superior Court, Guilford County. The jury found the defendant guilty of robbery with a firearm, and the trial court entered judgment imposing a sentence of life imprisonment. The Court of Appeals found no error in the defendant's trial. On 7 November 1991, this Court entered its order allowing the defendant's petition for discretionary review.

The defendant brings forth several assignments of error for our review. First, he contends that the trial court erroneously inquired into the jury's division and then erroneously refused to grant a mistrial after it became clear that the jury was hopelessly deadlocked. Second, the defendant argues that the admission of composite drawings created by use of police "Identi-kit" procedures amounted to prejudicial error, since no proper foundation was laid and the drawings were inadmissible hearsay. Third, the defendant

STATE v. PATTERSON

[332 N.C. 409 (1992)]

argues that he was prejudiced by testimony concerning police efforts to locate him, which were irrelevant to the issue of flight, and that the trial court's jury instruction on flight was not supported by the evidence. Finally, the defendant argues that the trial court's entry of judgment against him was void because he was not tried upon a proper indictment. We find the defendant's arguments without merit.

The State's evidence tended to show that two men robbed the Shoney's Restaurant on Randleman Road in Greensboro on 9 April 1977. Thomas Avant testified that he and the defendant agreed to rob the restaurant. They drove to the restaurant in Avant's girlfriend's car at about 1:00 or 2:00 a.m. on the morning in question. They entered the restaurant, where a supervisor asked what they were doing. Avant testified that either he or the defendant told the supervisor it was a "stick up" and ordered him to go into the restaurant office. The defendant was carrying a .22 caliber pistol. The manager was unable to open the safe in the office, and the defendant hit him on the head two or three times with the pistol. Avant went to the cash register and took out all the money. He and the defendant then put all the employees in a cold storage room and left.

Avant was arrested several days after the Shoney's robbery; he later pled guilty to several robbery charges. Avant testified that a week or two later he sent word to the defendant to get out of town. Thereafter, in hope of receiving help with regard to the charges and convictions against him, Avant told a detective with the Greensboro Police Department that the defendant had been his partner in the Shoney's Restaurant robbery.

Ralph Schultz testified that he was the manager present and in charge of the Shoney's Restaurant in question on the morning of 9 April 1977. Schultz unequivocally identified the defendant as one of the men who held him at length and then robbed him at gunpoint early that morning. He corroborated Avant's testimony as to what occurred during the robbery. Schultz testified that during the robbery the defendant hit him with a pistol and threatened to kill the employees.

Two or three weeks before trial, Schultz had been shown a photographic lineup that contained a picture of the defendant. He did not identify the photograph of the defendant as being the second robber with Avant. Schultz testified that the different angles

and distances from which the pictures were taken confused him, but that he had recognized the defendant as the second robber as soon as the defendant walked into the courtroom.

Kenneth Baldwin and Earnest Hardy were also present in the restaurant when the robbery occurred. They both testified that although they could not positively identify the defendant as one of the robbers, there were some similarities in appearance, most notably a mark under the defendant's eye.

[1]   In his first assignment of error, the defendant contends that the trial court improperly coerced a verdict by inquiring into the numerical division of the jury and by refusing to grant a mistrial when the jury appeared deadlocked. The record indicates that the jury began its deliberations at 3:57 p.m. on 24 August 1989 and deliberated until court was adjourned for the evening at 5:06 p.m. The jury resumed its deliberations at 9:37 a.m. on 25 August 1989. Approximately ten minutes later, the jury asked to be allowed to examine certain exhibits. The jury returned to the courtroom at 9:56 a.m. to view the exhibits. The jury resumed its deliberations at 10:27 a.m. At 11:15 a.m., the jury sent a note to the trial court stating: "We are unable to reach a unanimous decision at this time."

Before bringing the jury back into the courtroom, the trial court heard from the prosecutor and counsel for the defendant. The prosecutor asked that the trial court instruct the jury in accord with the version of the "Allen charge" set forth in N.C.G.S. § 15A-1235 and allow the jury to continue to deliberate. Counsel for the defendant requested that the trial court inquire as to the numerical division of the jury without asking whether the majority was leaning toward conviction or acquittal. The trial court made the inquiry specifically requested by counsel for the defendant, and the jury indicated that it was divided eleven to one. The trial court then instructed the jury in accord with N.C.G.S. § 15A-1235, emphasizing five separate times that each juror was to abide by his or her conscientious conviction as to the weight or effect of the evidence. The jury returned to the jury room to resume its deliberations at 11:24 a.m.

At 11:55 a.m., the jury sent a note to the trial court stating: "We are hopelessly deadlocked. It does not appear that any time or further deliberations would change the existing vote." The defendant moved for a mistrial at that point. The trial court denied

the motion and brought the jury back into the courtroom. The trial court expressed its appreciation for the work of the jury to that point and stated: "I think it would be to everyone's advantage, however, if you would continue your deliberations for some time yet. And this is not to put pressure on anybody to make any change." The trial court then recessed court for lunch, saying: "Perhaps a little bit of time away from the problem might be of some assistance."

After the lunch break, the trial court repeated the Allen charge and told the jurors they should "continue [their] deliberations for a while." The jury retired to the jury room for further deliberations and returned a verdict of guilty fifty-five minutes later. The jury was polled at the request of the defendant, and each juror expressed his or her individual assent to and agreement with the verdict.

By his first assignment of error, the defendant contends that the trial court improperly coerced the jury into returning a guilty verdict. The defendant argues that the actions of the trial court in coercing a verdict violated his right to trial by jury guaranteed by the Sixth Amendment to the Constitution of the United States and Article I, Section 24 of the Constitution of North Carolina. As the defendant failed to raise the federal constitutional issue at trial, however, he has waived any error in that regard and may not address it on appeal. State v. Bussey, 321 N.C. 92, 95, 361 S.E.2d 564, 566 (1987). We turn, then, to consider the defendant's arguments relating to the alleged error of the trial court in coercing a verdict in violation of the Constitution of North Carolina.

The defendant first argues in this regard that the trial court coerced a verdict by inquiring into the numerical division of the jury. The defendant specifically requested that the trial court make this inquiry. Therefore, any error in this regard was invited error which does not entitle the defendant to any relief and of which he will not be heard to complain on appeal. N.C.G.S. § 15A-1443(c) (1988); State v. Rivers, 324 N.C. 573, 380 S.E.2d 359 (1989).

The defendant next argues that the trial court improperly coerced a verdict by "refusing to grant a mistrial when the jury was deadlocked." It is well settled that Article I, Section 24 of the Constitution of North Carolina prohibits a trial court from coercing a jury to return a verdict. State v. Fowler, 312 N.C. 304, 322 S.E.2d 389 (1984). In determining whether a trial court's

actions are coercive under this section of our Constitution, we must analyze the trial court's actions in light of the totality of the circumstances facing the trial court at the time it acted. *Bussey*, 321 N.C. at 96, 361 S.E.2d at 566. The record reveals that the jury in the present case deliberated for a total of less than four hours before returning its verdict. This certainly was not an inordinately long period for deliberations in a trial which lasted three days and involved a felony which could lead to a sentence of imprisonment for life. Further, when the trial court sent the jury back to the jury room for further deliberations, it instructed the jury strictly in accordance with N.C.G.S. § 15A-1235(c). On each such occasion, the trial court reminded jurors not to forsake their honest convictions arising from the evidence. The trial court was faced with a situation in which the jury reported that it was deadlocked after rather scant deliberations which had been broken by various recesses. The trial court never impugned the efforts of the jury or implied in any way that the jury might be held for any unreasonable period of time to reach a unanimous verdict. Based upon the totality of the circumstances facing the trial court, we conclude that neither its refusal to grant a mistrial nor any of its other actions at trial were coercive of the jury's verdict. This assignment of error is without merit.

**[2]** In the defendant's second assignment of error, he contends that the trial court erred by admitting composite drawings of the perpetrators of the robbery in question, prepared with the participation of eyewitnesses to that crime and according to those witnesses' descriptions of the perpetrators. The defendant argues that those drawings or pictures were inadmissible because they were hearsay and also because they were not properly authenticated.

We first examine the defendant's contention that the composite pictures were inadmissible hearsay under the North Carolina Rules of Evidence. Under our Rules of Evidence, "[h]earsay is not admissible except as provided by statute or by these rules." N.C.G.S. § 8C-1, Rule 802 (1988). "Hearsay" is defined as "a *statement*, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801(c) (1988) (emphasis added). In this context, a "statement" is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion." N.C.G.S. § 8C-1, Rule 801(a) (1988).

## STATE v. PATTERSON

[332 N.C. 409 (1992)]

The Court of Appeals concluded that the composite pictures were inadmissible hearsay in the present case, because it viewed "a sketch as but a silent depiction or replication of 'an assertion made in words' about a suspect's corporeal appearance and thus a statement for purposes of the application of exclusionary Rule 802." *State v. Patterson*, 103 N.C. App. at 204, 405 S.E.2d at 206. The Court of Appeals then noted that North Carolina has not adopted a rule similar to Federal Rule of Evidence 801(d)(1), which provides that under certain circumstances, statements that are out-of-court identifications are not hearsay. *Id.* at 205, 405 S.E.2d at 206. The Court of Appeals concluded that, without an "escape hatch" such as that provided by Federal Rule 801(d)(1) removing prior identifications from the hearsay rule, the composite pictures in the present case were inadmissible hearsay. *Id.* at 205, 405 S.E.2d at 207. We do not agree.

The composite sketches or pictures in question here were created by Special Investigator J.A. Armfield using an "Identi-kit" procedure during consultations with four witnesses the day after the robbery. At trial, Armfield testified that the kit had hundreds of different facial features which he could place on clear plastic plates to construct a composite picture. He explained:

> [T]he composite process is performed by creating an original face, and then asking the individuals what's wrong with it, . . . at this point we begin changing the features of the face until the individual is satisfied that what we have is as close as we can get to the person they are trying to identify.

The State contends that no out-of-court statements of the witnesses themselves were introduced through the testimony of Special Investigator Armfield. The State argues that the composite pictures did not constitute "statements" and, therefore, were not hearsay under our Rules. The State reasons in support of this argument that the composite pictures are akin to a photograph, in that they are produced by mechanical procedures essentially re-creating a picture and not producing a "statement" or an "assertion" within the meaning of our Rules of Evidence. We agree.

Other appellate courts have had the opportunity to consider whether composite pictures fall within the definition of a "statement" under their jurisdictions' versions of Rule 801(a). Since North Carolina's Rule 801(a) mirrors the language of the versions applied in those jurisdictions, we find such cases instructive on questions

of whether such composite pictures are statements under our version of Rule 801(a).

In *United States v. Moskowitz*, 581 F.2d 14 (2d Cir. 1978), the United States Court of Appeals for the Second Circuit considered whether the trial court should have excluded a sketch of the defendant made by a police artist the day after the robbery in question. The court held that the composite drawing introduced against the defendant was not a "statement" under Federal Rule 801(a). *Id.* at 21. It explained that "[t]he sketch itself, as distinguished from [the witnesses'] statements about it, need not fit an exception to the rule against hearsay because it is not a 'statement' and therefore can no more be 'hearsay' than a photograph identified by a witness." *Id.*

In a similar case, the Supreme Court of Connecticut considered the admission of a composite picture made the day after the crime by the victim, who was aided by a state trooper using Identi-kit procedures. *State v. Packard*, 184 Conn. 258, 439 A.2d 983 (1981). The court noted that the composite picture had been admitted into evidence to show its likeness to the defendant. *Id.* at 274, 439 A.2d at 992. The court concluded that the picture was like a "sketch, photograph, map, chart or other pictorial, graphic or schematic illustration which are *not statements*, but nonverbal modes of testimony." *Id.* (emphasis added). As a result, the court concluded that admission of the composite picture was not hearsay.

We recognize that some courts have expressed a contrary view and have deemed such composite pictures to be hearsay. *See, e.g., People v. Johnson*, 505 N.Y.S.2d 451, 122 A.D.2d 812 (1986); *Commonwealth v. Rothlisberger*, 197 Pa. Super. 451, 178 A.2d 853 (1962). However, we are persuaded by the reasoning of cases such as *Moskowitz* and *Packard* and conclude that a composite picture of a perpetrator prepared by police pursuant to the directions of a witness to a crime does not constitute a "statement" under North Carolina Rule of Evidence 801(a). Such a composite picture is the functional equivalent of a photograph in that it merely reflects the perpetrator's likeness, albeit as recorded by the witness's eyes rather than the witness's camera. No assertion or statement is involved. Therefore, a composite picture is not "hearsay" as defined by Rule 801(c), and Rule 802 does not apply to bar the admission of a composite picture into evidence.

[3] We next examine under this assignment the defendant's contention that the composite pictures in the present case were inadmissible because they were not properly authenticated. The Court of Appeals concluded that the composite pictures were properly authenticated under Rule 901(a) by the testimony of Special Investigator Armfield, but that they failed the relevancy test of Rule 401 because the State failed to offer evidence that they accurately portrayed the eyewitnesses' recollections of what the perpetrators had looked like. *Patterson*, 103 N.C. App. at 203, 405 S.E.2d at 205. We conclude, however, that the absence of evidence tending to show that the composite pictures accurately portrayed the men the eyewitnesses had seen committing the crime in question in this case resulted in a failure to satisfy the requirement of authentication precedent to admissibility prescribed by Rule 901(a). *See In re Rogers*, 297 N.C. 48, 67, 253 S.E.2d 912, 924 (1979) (decided prior to the enactment of the North Carolina Rules of Evidence); *see generally* 1 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 35 (3d ed. 1988). For this reason—different from that relied on by the Court of Appeals—we agree with the conclusion of the Court of Appeals that the trial court erred in admitting the composite pictures into evidence.

We also agree with the conclusion of the Court of Appeals that any error in the admission of the composite pictures in the present case was harmless error. As the error alleged by the defendant in this regard did not arise under the Constitution of the United States, the defendant has the burden of showing prejudice by establishing that, had the error in question not been committed, a different result would have been reached at his trial. N.C.G.S. § 15A-1443(a) (1988).

In the present case, the State produced two eyewitnesses who testified in open court—the defendant's accomplice and the victim Schultz, the manager of Shoney's. Both identifications were unequivocal and definite. The defendant has made no showing that, given such unequivocal and unshakeable testimony identifying him as one of the perpetrators of the crime, the composite pictures changed the result reached at trial. Therefore, the defendant has failed to meet his burden of showing prejudice. This assignment is without merit.

[4] The defendant argues under his next assignment of error that the trial court erred in admitting testimony concerning a detective's

efforts to locate him because the testimony was not relevant as tending to show flight. The defendant specifically objects to the detective's testimony that he contacted thirteen different people in six different states and the District of Columbia over eleven years in an effort to find the defendant. The defendant contends that there was no evidence that he was ever in any of these places; therefore, he argues, the testimony prejudicially painted a picture of a fugitive on the run. In addition, the defendant contends under this assignment that the trial court's instruction on flight was erroneous because it was not supported by the evidence.

The rule in North Carolina is that evidence of flight by the accused may be used as some evidence of guilt. *State v. Lampkins*, 283 N.C. 520, 523, 196 S.E.2d 697, 698 (1973). Such evidence creates no presumption of guilt, "but may be considered with other facts and circumstances in determining whether all the circumstances amount to an admission of guilt or reflect a consciousness of guilt." *Id.* In *Lampkins*, the investigating police officer testified: "I made numerous checks at locations throughout the east side [of Winston-Salem] in an attempt to locate the defendant, and it was approximately four months later that I finally talked with him." *Id.* at 522, 196 S.E.2d at 698. We concluded that such evidence was sufficient to support the trial court's instruction to the jury concerning flight, as it reasonably supported the inference that the defendant had fled after committing the crime. *Id.* at 525, 196 S.E.2d at 699.

In the present case, the testimony of the detective was relevant to show flight. The defendant's accomplice testified that he warned the defendant to flee the jurisdiction. The detective testified that he conducted an exhaustive search, including interviewing many family members and personal friends of the defendant, for twelve years until the defendant turned up in California. This evidence clearly supports the inference that the defendant was avoiding apprehension, thus supporting the instruction on flight. *Id.* This assignment of error is without merit.

[5] In his last assignment of error, the defendant contends that the trial court's entry of judgment against him is void because the indictment he was tried upon was defective. The defendant argues that the indictment against him was dismissed with leave ten years before the defendant's trial and was never properly reinstated; he contends that, as a result, the trial court lacked jurisdiction to try him. We do not agree.

We note regarding this assignment of error that the State has made a motion to amend the record pursuant to Rules 37(a) and 27(c) of the North Carolina Rules of Appellate Procedure to include three trial calendars from the Superior Court reflecting the reinstatement of this case in the Superior Court, Guilford County, following the dismissal with leave filed on 4 October 1979. We allow this motion.

A dismissal with leave may be entered by a prosecutor when a defendant: "(1) Cannot be readily found to be served with an order for arrest after the grand jury had indicted him; or (2) fails to appear at a criminal proceeding at which his attendance is required, and the prosecutor believes the defendant cannot be readily found." N.C.G.S. § 15A-932(a) (1988). A prosecutor may reinstate the proceedings "by filing written notice with the clerk." N.C.G.S. § 15A-932(d) (1988).

We are aware that our Court of Appeals in *State v. Reekes*, 59 N.C. App. 672, 297 S.E.2d 763, *disc. rev. denied*, 307 N.C. 472, 298 S.E.2d 693 (1982), has implied that placing a case on the trial calendar subsequent to a dismissal with leave is sufficient to meet the written notice requirement for reinstatement of an indictment under N.C.G.S. § 15A-932. However, we expressly decline to comment on or consider that issue in deciding the case before us.

Assuming *arguendo* that the prosecutor did not give proper written notice of reinstatement as required by N.C.G.S. § 15A-932, we conclude that the defendant waived any such error by failing to object before his arraignment. An indictment is a pleading for the State in a criminal case. *See* N.C.G.S. §§ 15A-921(7) and -923. Under N.C.G.S. § 15A-952(b)(6) and (c), motions addressed to criminal pleadings must be made before the defendant is arraigned. An exception to this rule applies to "[m]otions concerning jurisdiction of the court or the failure of the pleading to charge an offense [which] may be made at any time." N.C.G.S. § 15A-952(d) (1988). However, the statute in question, N.C.G.S. § 15A-932(d), which provides for reinstatement of an indictment after a dismissal with leave is taken, is not "jurisdictional" in nature, nor does failure to strictly comply with its requirements result in the "failure of the pleading to charge an offense" within the meaning of N.C.G.S. § 15A-952(d). Instead, the dismissal with leave contemplated in N.C.G.S. § 15A-932(b) is a procedural calendaring device, which

results in removal of the case from the docket of the court, but all process outstanding retains its validity, and all necessary actions to apprehend the defendant, investigate the case, or otherwise further its prosecution may be taken, including the issuance of nontestimonial identification orders, search warrants, new process, initiation of extradition proceedings, and the like.

N.C.G.S. § 15A-932(b).

By failing to object prior to his arraignment, the defendant waived any error involved in the State's alleged failure to comply with the written notice requirement under N.C.G.S. § 15A-932(d). Accordingly, this assignment of error is without merit.

For the foregoing reasons, which differ substantially from the reasons relied upon by the Court of Appeals in its opinion in this case, the holding of the Court of Appeals that there was no error in the defendant's trial is affirmed.

Affirmed.

Justice FRYE concurring in result.

I respectfully disagree with the Court's holding that the composite pictures in this case are not hearsay. I believe they are hearsay and, not falling within any recognized exception to the hearsay rule, should have been excluded as substantive evidence. I agree with the Court, however, that the admission of the composite pictures in this case did not prejudice defendant. I therefore concur in the result reached by the Court.

As a preliminary matter, I agree with the Court that the composite pictures were not properly authenticated, and therefore should not have been admitted into evidence for that reason. Having reached this conclusion, it seems unnecessary for the Court to even reach the issue of whether the composite pictures also should have been excluded as hearsay. Because the Court reached this issue, however, I must register my disagreement.

The Court errs, I believe, in its conclusion that the composite pictures are not "statements" or "assertions" within our Rules of Evidence. I cannot accept the Court's adoption of the State's argument that the composite pictures "are akin to a photograph, in that they are produced by mechanical procedures essentially

re-creating a picture and not producing a 'statement' or an 'assertion' within the meaning of our Rules of Evidence." *State v. Patterson*, 332 N.C. 409, 420 S.E.2d 98 (1992). Instead, I find persuasive the following analysis from the unanimous opinion of the Court of Appeals below:

> The threshold question is whether the sketches are "statements" within the meaning of Rule [of Evidence] 801(a): "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion." The North Carolina Commentary to this definition of "statement" points out the seeming non-difficulty of interpretation of the first sub-part:
>
>> It can scarcely be doubted that an assertion made in words is intended by the declarant to be an assertion. Hence verbal assertions readily fall into the category of 'statement.'
>
> The State quotes *Moskowitz*, for the proposition that "the sketch itself, as distinguished from [the victims'] statements about it, need not fit an exception to the rule against hearsay because it is not a 'statement' and therefore can no more be 'hearsay' than a photograph identified by a witness." [*United States v. Moskowitz*, 581 F.2d 14, 21 (2d cir.), *cert. denied*, 439 U.S. 871, 58 L. Ed. 2d 184 (1978)]. Reasoning from the language in the State Commentary to Rule 801(a)(1), we view a sketch as but a silent depiction or replication of "an assertion made in words" about a suspect's corporeal appearance and thus a statement for purposes of the application of exclusionary Rule 802.
>
> . . . .
>
> In the present case, absent any State rule parallel to the Federal Rule 801(d)(1) "escape hatch" from the hearsay rule for prior statements and prior identifications, this Court cannot say that a sketch based on oral assertions, and on oral assertions alone, is not a "statement" and, therefore, not subject to the hearsay rules, as a preliminary matter. In that sense, the composites here are not analogous to photographs because the sketches are not necessarily an "accurate" representation of what they in fact purport to show.
>
> Under either a relevance analysis or a hearsay analysis, the sketches in this case were inadmissible. The relevance

of the sketches was not established because the witnesses who had seen the robbers did not testify at trial about the accuracy of the police composites. As "statements," Rule 802 of the North Carolina Rules of Evidence requires their exclusion if offered as substantive evidence, because they do not come within a hearsay exception.

*State v. Patterson*, 103 N.C. App. 195, 203-205, 405 S.E.2d 200, 206-07 (1991); *accord State v. Motta*, 66 Haw. 254, 659 P.2d 745 (1983); *Commonwealth v. Rothlisberger*, 197 Pa. Super. 451, 178 A.2d 853 (1962).

Put simply, it seems clear that had the police artist repeated the statements made to him by the eyewitnesses, these statements would be classified as hearsay. How, then, can the product of these statements — the composite pictures — be somehow transformed into nonhearsay? I don't believe it can and thus am unable to join the Court's opinion. I therefore concur only in the result reached by the Court.

Justices WEBB and WHICHARD join in this concurring opinion.